THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
RICHARD LEE (Cal. State Bar # 193279)
Assistant United States Attorney
National Security Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2692
    Facsimile: (213) 894-3713
    E-Mail: richard.lee@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08- **CR08-00750** |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT AIR SHUNT INSTRUMENTS, INC. |
| v. | |
| AIR SHUNT INSTRUMENTS, INC., | |
| Defendant. | |

1.  This constitutes the binding plea agreement between defendant AIR SHUNT INSTRUMENTS, INC. ("defendant" or "Air Shunt") and the United States Attorney's Office for the Central District of California in the above-captioned case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

///

///

///

PLEA

2.  Defendant agrees to waive indictment by grand jury and plead guilty to a one-count information charging defendant with violating 18 U.S.C. § 1001, false statement, in the form attached to this agreement, or a substantially similar form.

CORPORATE AUTHORIZATION

3.  Defendant will provide to the USAO written evidence in the form of a notarized resolution of the Board of Directors of defendant, with both notary and corporate seals, certifying that defendant is authorized to plead guilty to the one-count information and to enter into and comply with all provisions of this agreement. The resolution shall further certify that Hagop Nakkashian, President of defendant, is authorized to take these actions and that all corporate formalities, including, but not limited to, approval by defendant's directors, required for such authorization have been observed.

NATURE OF THE OFFENSE

4.  In order for defendant to be guilty of making a false statement, in violation of Title 18, United States Code, Section 1001, the following must be true: (1) the defendant concealed a material fact in a matter within the jurisdiction of the United States Department of Commerce; (2) the defendant acted willfully, that is deliberately and intentionally to conceal a material fact, namely stating that an export license was not required when it was; and (3) the statement was material to the U.S. Department of Commerce's activities or decisions. A statement is material if it could have influenced the agency's decisions or activities. Defendant admits that defendant is, in fact, guilty of this

offense as described in count ONE of the information.

Defendant Air Shunt, by and through its corporate representative, Hagop Nakkashian, admits that defendant is, in fact, guilty of the offense as charged in the information.

## PENALTIES AND RESTITUTION

5.  The statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1001 is: a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $400.00.

6.  Defendant understands that the conviction in this case could result in its debarment and/or continued debarment and ineligibility to participate in any contract in which the United States Department of Defense is a party. Defendant further understands that the conviction in this case may result in its ineligibility to obtain any import or export license from the United States Departments of State, Treasury, and Commerce, or to participate in any manner whatsoever in any import or export license issued by the United States Departments of State, Treasury, and Commerce.

## FACTUAL BASIS

7.  Defendant and the USAO agree and stipulate to the statement of facts attached hereto as Exhibit A. This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement and to establish the recommended sentence set forth in paragraph 9 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that

relate to that conduct.

## WAIVER OF CONSTITUTIONAL RIGHTS

8. By pleading guilty, defendant gives up the following rights:

   a) The right to persist in a plea of not guilty.

   b) The right to a speedy and public trial by jury.

   c) The right to the assistance of retained counsel at trial.

   d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

   e) The right to confront and cross-examine witnesses against defendant.

   f) The right, if defendant wished, to present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## SENTENCING FACTORS

9. Defendant and the USAO agree that an appropriate disposition of this case is for the Court to impose a $250,000 fine and a $400 special assessment. Defendant agrees to pay the $250,000 fine and the $400 special assessment at the time of sentencing.

10. The Court will determine the facts and calculations relevant to sentencing and decide whether to agree to be bound by

this agreement. Defendant acknowledges and agrees that any requirements of <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) and <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), have no effect in this case, if the Court accepts the agreement, because this is a plea agreement under which the specific sentence has been agreed to by defendant under Federal Rule of Criminal Procedure 11(c)(1)(C). Both defendant and the USAO are free to supplement the facts by supplying relevant information to the United States Probation Office and the Court.

11. Defendant understands and agrees that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). So long as defendant does not breach the agreement, defendant may withdraw from this agreement and render it null and void if the Court refuses to be bound by this agreement. The USAO may, in its discretion, withdraw from this agreement and render it null and void if the defendant breaches this agreement or the Court refuses to be bound by this agreement.

<center>DEFENDANT'S OBLIGATIONS</center>

12. Defendant agrees:

   a) To plead guilty as set forth in this agreement, by and through its corporate representative, Hagop Nakkashian.

   b) To not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

   c) To not knowingly and willfully fail to: (i) appear as ordered for all court appearances and (ii) obey any other ongoing court order in this matter.

   d) Not to commit any crime.

   e) To not knowingly and willfully fail to be truthful

at all times with Pretrial Services, the U.S. Probation Office, and the Court.

      f)   To pay the agreed upon $250,000 fine and the applicable special assessment at or before the time of sentencing.

13. Defendant also agrees to provide to the USAO for its approval, prior to entering its guilty plea, written procedures for ensuring that all of Air Shunt's officers and employees are made aware of the requirements and regulations governing the import and export of military and defense parts as regulated by the United States Departments of State, Commerce, and Treasury, and the Bureau of Alcohol, Tobacco and Firearms, and procedures for ensuring compliance with such import and export requirements and regulations. The approval of the written compliance program presented by Air Shunt to the USAO is within the sole discretion of the USAO.

## THE USAO'S OBLIGATIONS

14. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees to abide by all sentencing stipulations contained in this agreement. Additionally, the USAO agrees not to criminally prosecute Hagop Nakkashian or Paul Nakkashian for violations arising out of the conduct described in the stipulated factual basis set forth in Attachment A. Mr. Hagop Nakkashian and Mr. Paul Nakkashian understand that the USAO is free to prosecute either of them for any other unlawful past conduct not related to the conduct described in the stipulated factual basis set forth in Attachment A or any unlawful conduct that occurs after the date of this

agreement.

## BREACH OF AGREEMENT

15. If defendant, at any time between the execution of this agreement and defendant's sentencing, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of its obligations under this agreement.

16. Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge or any civil or administrative action that was either dismissed or not filed as a result of this agreement, then:

    a) Defendant agrees that the applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the USAO's discovery of any knowing and willful breach by defendant.

    b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

    c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the stipulated factual basis statement in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any future prosecution of defendant, and defendant

shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

<u>LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

17. Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is determined, provided that the sentence is that agreed to in paragraph 9 above. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable sentencing statutes, or statutes of conviction.

18. The USAO gives up its right to appeal any sentence imposed by the Court, including any order of restitution, provided that the sentence is that agreed to in paragraph 9 above.

<u>SCOPE OF AGREEMENT</u>

19. The Court is not a party to this agreement and need not accept any of defendant's or the USAO's sentencing recommendations or the parties' stipulations.

20. This agreement applies only to crimes committed by defendant as charged in the information, has no effect on any proceedings against defendant not expressly mentioned herein, and shall not preclude any past, present, or future forfeiture actions.

## NO ADDITIONAL AGREEMENTS

21. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

22. The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

## EXPIRATION OF THE PLEA AGREEMENT

23. If a fully executed copy of this agreement is not returned to the United States Attorney's Office by the close of business on **June 4, 2008** this agreement will be automatically withdrawn and thereafter have no legal force or effect.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

THOMAS P. O'BRIEN
United States Attorney

*[signature]*                                    6-17-08
RICHARD LEE                                      Date
Assistant United States Attorney

Pursuant to the terms and conditions set forth in paragraph three of this agreement, I am authorized to enter into this

agreement and to enter a guilty plea to the one-count information on behalf of defendant Air Shunt Instruments, Inc. ("Air Shunt"). I have read this agreement and carefully discussed every part of it with Air Shunt's attorney. I understand the terms of this agreement, and on behalf of Air Shunt, I voluntarily agree to those terms. Air Shunt's attorney has advised me of Air Shunt's rights, of possible defenses, of the binding nature of the plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of Air Shunt's attorney in this matter.

_____                    5/20/08
HAGOP NAKKASHIAN                                  Date
Representative for Defendant
Air Shunt Instruments, Inc.

    I am the attorney for Air Shunt Instruments, Inc. I have carefully discussed every part of this agreement with Hagop Nakkashian, the authorized representative of Air Shunt Instruments, Inc. (hereinafter collectively referred to as "my client"). Further, I have fully advised my client of its rights, of possible defenses, of the Sentencing Guidelines' provisions,
///
///
///

and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____  5/27/08
ROBERT J. GORENCE         Date

Counsel for Defendant
Air Shunt Instruments, Inc.

11

## EXHIBIT A

## STIPULATED STATEMENT OF FACTS

Defendant Air Shunt Instruments, Inc. ("defendant" or "Air Shunt"), by and through its corporate representative Hagop Nakkashian, and its counsel of record, Robert Gorence, Esq. hereby stipulate that the following statement of facts is incorporated into the plea agreement between the USAO and defendant. Defendant, by and through its corporate representative, admits the following facts:

Air Shunt was located at 9101 Winnetka Avenue, Chatsworth, California. John Nakkashian, an Air Shunt vice-president was responsible for international sales and obtaining all required licenses for any such sale. At all relevant times, John Nakkashian was acting within the scope of his authority when engaging in the conduct set forth below.

Defendant was in the business of selling genuine replacement parts to the aerospace industry. Many of the parts procured and sold by defendant were military parts, and some of those parts were covered by the United States Munitions List ("USML"). For those parts covered by the USML, defendant was required to obtain an export license from the United States Department of State before any such USML part could be exported from the United States. John Nakkashian, an Air Shunt vice-president, knew that it was illegal to export defense articles covered by the USML from the United States without first obtaining an export license from the Department of State.

On or about September 3, 2003, a request for quote ("RFQ") was faxed to defendant from Bangkok, Thailand from a company

purporting to be operating under the name "Southeast Asia Aeronautics and Engineering" ("SAAE"), with an address of 88/175 Soi Nawin, Cheung Pleng Road, Yannawa, Bangkok, Thailand. The RFQ was purportedly sent by "Mohammad Bin Nasser." The RFQ requested information regarding the cost of purchasing parts for military aircraft, namely a gyroscope, part number 8KD9AF6. On or about September 5, 2003, a quote was faxed to SAAE in Thailand indicating that the purchase price for the gyroscope was $15,000. The quote displayed defendant's company logo, address, telephone and facsimile numbers. The quote also indicated that it was the responsibility of the purchaser, namely SAAE, to obtain any necessary export license.

On or about October 1, 2003, a price negotiation letter was faxed from SAAE to Air Shunt which requested a reduction in the purchase price for the gyroscope. On or about October 2, 2003, a new price quote was faxed to SAAE, in which the price for the purchase of the gyroscope was reduced to $14,850. The new price quote displayed defendant's company logo, address, telephone and facsimile numbers, and contained the same language indicating that it was the responsibility of the purchaser to obtain an export license.

On or about November 12, 2003, a purchase order was faxed from SAAE to Air Shunt for the purchase of one gyroscope, part number 8KD9AF6. In the purchase order, Air Shunt was instructed to ship the parts to Thailand using a freight forwarder located in San Diego, California.

On or about November 14, 2003, a pro forma invoice was faxed from Air Shunt to SAAE in Thailand, which set forth the cost of


purchasing and shipping the gyroscope and payment instructions, including Air Shunt's bank account number and wire transfer instructions.

On or about December 3, 2003, a package containing a gyroscope, part number 8KD9AF6, was received from Air Shunt by the freight forwarder in San Diego, California for shipment to Thailand. Among the documents located in the packaging for the gyroscope was a packing slip which indicated that the gyroscope was to be shipped to SAAE, with an address of "88/175 Soi Nawin, Cheung Pleng Road, Yannawa, Bangkok 10120 Thailand."

In addition, along with the package, the exporter, namely defendant, was required to properly and accurately fill out a Shipper's Export Declaration (Form Number 7525-V). The Shipper's Export Declaration (Form Number 7525-V) is a document filled out by the exporter when the value of the commodity being shipped exceeds $2,500 or when an export license is required for a shipment from the United States to another country. Regarding this package which was shipped on or about November 26, 2003, defendant in Box 27 of Form Number 7525-V, which asks about licenses, typed "NLR" which stands for "No License Required" even though a license was in fact required prior to the export of the gyroscope. The fact that a license was required was a material fact.

Defendant, as the exporter, concealed a material fact in a matter within the jurisdiction of the United States Department of Commerce. Defendant acted willfully, that is deliberately, intentionally, and knowingly to conceal a material fact, namely the fact that a license was required; and the statement was

material to the United States Department of Commerce's activities or decisions.

Air Shunt represents and the government does not dispute that it took appropriate disciplinary action against John Nakkashian, the relevant empowered official who perpetrated the acts charged herein. Further, Air Shunt represents and the government does not dispute that since August 2004, Air Shunt adopted effective standards of conduct and internal control systems that should prevent or eliminate any violations in the future. Air Shunt also represents and the government does not dispute that Air Shunt has instituted new and revised review and control procedures and ethics training programs designed to prevent or detect any violations. Finally, Air Shunt represents and the government does not dispute that Air Shunt's current management recognizes and understands the seriousness of the misconduct giving rise to the criminal acts and has implemented programs to prevent recurrence.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 08- |
| | ) | |
| Plaintiff, | ) | <u>I N F O R M A T I O N</u> |
| | ) | |
| v. | ) | [18 U.S.C. § 1001: False Statement] |
| | ) | |
| AIR SHUNT INSTRUMENTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C.§ 1001]

On or about November 26, 2003, in Los Angeles County, within the Central District of California, and elsewhere, in a matter within the jurisdiction of United States Department of Commerce, defendant AIR SHUNT INSTRUMENTS, INC. ("AIR SHUNT") knowingly and willfully concealed and covered up by scheme a material fact, in that the defendant was required to fill out a Shipper's Export Declaration Form Number 7525-V for international packages

requiring an export license, defendant sent an international package which required an export license, and defendant knowingly and willfully indicated that no license was required on the Shipper's Export Declaration Form.

THOMAS P. O'BRIEN
United States Attorney


CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

EILEEN M. DECKER
Assistant United States Attorney
Chief, National Security Section

RICHARD LEE
Assistant United States Attorney
National Security Section